UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KELECHI COLLINS UMEH,<br>  a/k/a/ "Bishop," a/k/a "Jacob Emmanuel,"<br>  a/k/a/ "James Emmanuel," a/k/a "Kelvin Thomas," a/k/a "Paul Douglas," a/k/a "Brian Morgan," a/k/a "John Isiah,"<br><br>Defendant | Criminal No.  23cr10013<br><br>Violation:<br><br>Count One: Bank Fraud Conspiracy<br>(18 U.S.C. § 1349)<br><br>Forfeiture Allegation:<br>(18 U.S.C. §§ 981(a)(1)(C), 982(a)(2), and 28 U.S.C. § 2461) |

## INFORMATION

At all times relevant to this Information:

### General Allegations

1.  KELECHI COLLINS UMEH ("UMEH"), also known as "Bishop," "Jacob Emmanuel," "James Emmanuel," "Kelvin Thomas," "Paul Douglas," "Brian Morgan," and "John Isiah," lived in Massachusetts.

2.  Victim 1 was an individual who lived in Texas.

3.  Victim 2 was a cash-advance company based in California that offered funds to individuals awaiting court settlements.

4.  Citizen's Bank, N.A. ("Citizens"), Santander Bank, N.A. ("Santander"), and TD Bank N.A. ("TD Bank") were all financial institutions within the meaning of 18 U.S.C. § 20.

5.  "Romance scams" were a type of fraud enabled by the creation of fictitious profiles on online dating or social media websites. Individuals perpetrating romance scams used these online dating profiles to gain the trust of potential victims, and thereafter to direct victims to transfer money under false pretenses.

6. "Advance fee schemes" were a type of fraud in which the victim paid money to someone in anticipation of receiving something of greater value—such as a loan, contract, investment, or gift—and then received little or nothing in return.

7. "Business email compromise schemes" were a type of fraud in which a fraudster sent email messages that appeared to come from a known source making a legitimate request to transfer funds.

### Overview of the Conspiracy and Scheme to Defraud

8. Beginning no later than in or about 2018, and continuing through at least in or about 2020, UMEH, together with others known and unknown to the U.S. Attorney, engaged in a conspiracy to open bank accounts using fake foreign passports to receive the proceeds of romance, advance fee, and business email compromise schemes. UMEH and co-conspirators known and unknown to the U.S. Attorney then rapidly withdrew the victims' money from bank branches and ATMs.

### Object and Purpose of the Conspiracy

9. The object of the conspiracy was to commit bank fraud. The principal purpose of the conspiracy was to make money by receiving, withdrawing, and sending victims' money to other members of the conspiracy.

### Manner and Means of the Conspiracy and Scheme to Defraud

10. Among the manner and means by which UMEH and co-conspirators known and unknown to the U.S. Attorney carried out the conspiracy and scheme to defraud were the following:

    a. Opening fraudulent bank accounts using aliases and fake passports;

b. Using the bank accounts to receive money that victims were induced to send under false pretenses; and

c. Rapidly withdrawing the victims' money from the fraudulent bank accounts and diverting that money to co-conspirators' benefit.

Acts in Furtherance of the Conspiracy and Scheme to Defraud

11.     On various dates between in or about 2018 and in or about 2020, UMEH and co-conspirators known and unknown to the U.S. Attorney committed and caused to be committed the following acts in furtherance of the conspiracy and scheme to defraud:

*Victim 1*

12.     In or about November 2017, a co-conspirator sent Victim 1 a "friend request" via Facebook purporting to be "Gibson Banks," a person Victim 1 did not know. Victim 1 and "Banks" began communicating on a regular basis. "Banks" told Victim 1 that he was a soldier in the U.S. Army conducting special operations missions across the world and was currently working in Syria.

13.     In or about January 2018, "Banks" persuaded Victim 1 to travel to Belgium with $10,000 so that "Banks" could retrieve a "consignment box" containing $24 million.

14.     In or about January 2018, while Victim 1 was in Belgium, "Banks" directed her to draw approximately $26,000 against her credit card accounts at various Western Union locations in Antwerp and Brussels, and to give that money to a co-conspirator identifying himself as "Daniel," so that "Banks" could obtain the "consignment box."

15.     After Victim 1 returned to the United States, "Daniel" and "Banks" solicited Victim 1 to send more money. They advised Victim 1, falsely, that the money was for the purpose of

3

purchasing special chemicals to remove ink from the currency in the "consignment box" and for giving to authorities as bribes in order to move those funds out of Belgium, as well as for the purpose of paying to care for children who were sick and securing the release of "Banks" from a Syrian prison. In total, Victim 1 sent more than $720,000 in funds to "Banks" and his associates.

16. For example, in or about the fall and winter of 2019, Victim 1 mailed $70,000 in cashier's checks to "James," a friend of "Banks" who was purportedly raising money to secure the release of "Banks" from prison.

17. On or about October 18, 2019, UMEH opened an account ending in 7685 at a TD Bank branch in Reading, Massachusetts ("the 7685 Account") in the name of "Jacob Emmanuel." To open that account, UMEH provided the bank with a fake South African passport.

18. On or about October 19, 2019, Co-Conspirator 1 ("CC-1") deposited a $10,000 cashier's check from Victim 1 payable to "Jacob Emmanuel" into the 7685 Account.

19. On or about October 24, 2019, UMEH withdrew $7,600 in cash from the 7685 Account.

20. On or about October 25, 2019, UMEH withdrew $2,350 in cash from the 7685 Account.

21. On or about October 29, 2019, CC-1 deposited a $14,000 cashier's check from Victim 1 and payable to "Jacob Emmanuel" into the 7685 Account.

22. On or about November 2, 2019, a co-conspirator withdrew $7,780 from the 7685 Account.

23. On or about November 4, 2019, UMEH withdrew $6,180 in cash from the 7685 Account.

*Victim 2*

24.     In or about October 2018, an individual purporting to be an attorney approached Victim 2 on behalf of his purported client, "Stephen Beuchaws," about providing funding to "Beuchaws," who was purportedly awaiting a wrongful termination settlement from his former employer, a major pharmaceutical company.

25.     "Beuchaws" had provided the lawyer with documents, including documents purportedly on the letterhead of the major pharmaceutical company, supporting his wrongful termination claim. "Beuchaws" also provided the lawyer with a purported cashier's check for $472,284 drawn on the pharmaceutical company's account at HSBC Bank and payable to the lawyer on behalf of "Beuchaws."

26.     As a result of "Beuchaws's" representations and the documents he provided, between in or about November and December 2018, Victim 2 wired a total of $78,300 as an advance payment on the expected wrongful termination settlement to a TD Bank account in the name of Kelvin Thomas with an account number ending in 6073 (the "6073 Account").

27.     A co-conspirator had opened the 6073 Account at a TD Bank branch in Boston, Massachusetts on or about November 21, 2018. To open the account, the co-conspirator presented the bank with a fake South African passport.

28.     On or about November 28, 2018, UMEH withdrew $8,000 in cash from the 6073 Account.

COUNT ONE
Bank Fraud Conspiracy
(18 U.S.C. § 1349)

The U.S. Attorney charges:

29.     The U.S. Attorney re-alleges and incorporates by reference Paragraphs 1-28 of this Information.

30.     From in or about 2018 through in or about 2020, in the District of Massachusetts and elsewhere, the defendant,

KELECHI COLLINS UMEH,
a/k/a "Bishop,"
a/k/a "Jacob Emmanuel,"
a/k/a "James Emmanuel,"
a/k/a "Kelvin Thomas,"
a/k/a "Paul Douglas,"
a/k/a "Brian Morgan,"
a/k/a "John Isiah,"

conspired with others known and unknown to the U.S. Attorney to commit bank fraud, that is, to knowingly execute, and attempt to execute, a scheme and artifice to defraud financial institutions, that is, Santander, Citizens, and TD Bank, and to obtain moneys, funds, credits, assets, securities and other property owned by and under the custody and control of those financial institutions by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Section 1349.

BANK FRAUD FORFEITURE ALLEGATION
(18 U.S.C. §§ 981(a)(1)(C), 982(a)(2), and 28 U.S.C. § 2461(c))

31. Upon conviction of the offenses of conspiracy to commit bank fraud in violation of Title 18, United States Code, Section 1349, set forth in Count One, the defendant,

KELECHI COLLINS UMEH,
a/k/a "Bishop,"
a/k/a "Jacob Emmanuel,"
a/k/a "James Emmanuel,"
a/k/a "Kelvin Thomas,"
a/k/a "Paul Douglas,"
a/k/a "Brian Morgan,"
a/k/a "John Isiah,"

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses, and, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such offenses. The property to be forfeited includes, but is not limited to, the following:

    a. $512,502.20 in United States currency, to be entered in the form of an Order of Forfeiture (Money Judgment).

32. If any of the property described in Paragraph 31, above, as being forfeitable pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

7

      e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), both incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraph 32 above.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2) and Title 28, United States Code, Section 2461(c).

RACHAEL S. ROLLINS
United States Attorney

By:  */s/ Kristen A. Kearney*
KRISTEN A. KEARNEY
Assistant United States Attorney

January 12, 2023